UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60668-CIV-COHN/SNOW

SCHINDLER ARCHITECTS, INC.,
f/k/a DAVID AND SCHINDLER
ARCHITECTS, INC.,

        Plaintiff,

vs.

FIDELITY AND GUARANTY
INSURANCE UNDERWRITERS, INC.,

        Defendant.

_____/

## ORDER ON VARIOUS MOTIONS

**THIS CAUSE** is before the Court upon Plaintiff's Motion to Strike Defendant's Motion for Partial Summary Judgment [DE 42]; Plaintiff's Motion to Strike Paragraphs 24, 28, 30, 32, 34, 38, and 43 of the Defendant's Statement of Undisputed Facts [DE 41]; Plaintiff's Motion to Strike Defendant's Amended Statement of Undisputed Material Facts [DE 57]; Plaintiff's Motion to Strike the Affidavit of John Retinger [DE 46]; Plaintiff's Motion to Strike the Affidavit of Sharon Kerwick [DE 58]; Defendant's Motion for Partial Summary Judgment [DE 31]; and Plaintiff's Motion for Final Summary Judgment [DE 27]. The Court has considered the Motions, and the various corresponding Responses and Replies, and is otherwise duly advised in the premises.

I.    **Background**

    This is a breach of contract action for recovery of the proceeds of an insurance policy following a fire on January 22, 2004. The dispute arose over the scope of insurance coverage provided by the insurer, Fidelity and Guaranty Insurance

Underwriters, Inc., in its policy issued to the insured, Schindler Architects.  This Court

has diversity jurisdiction because  the Plaintiff is a Florida corporation and the

Defendant is a corporation incorporated under the laws of another state and having its

principal place of business in another state.  The amount in controversy exceeds

$75,000.

Defendant Fidelity and Guaranty has filed a Motion for Partial Summary

Judgment, and Plaintiff Schindler Architects has filed a Motion for Final Summary

Judgment.  Plaintiff has also filed several related motions addressing various aspects of

the Defendant's Motion for Partial Summary Judgment and accompanying supporting

submissions.  The Court considers each Motion in turn.

## II.   Plaintiff's Motion to Strike Defendant's Motion for Partial Summary Judgment [DE 42]

Plaintiff first moves to strike Defendant's Motion for Partial Summary Judgment.

The Court has considered the Plaintiff's Motion, Defendant's Response [DE 64], and

Plaintiff's Reply [DE 67], and is otherwise fully advised in the premises.

In this Motion, Plaintiff challenges Defendant's arguments as to its Third, Fourth,

and Sixth Affirmative Defenses in its Motion for Partial Summary Judgment.  The crux

of Plaintiff's Motion to Strike is that Defendant raises arguments that were not properly

plead in its Answer and Affirmative Defenses.  Plaintiff argues that the affirmative

defenses were plead in such general terms that they did not provide adequate notice

that these issues were to be raised.  Plaintiff also argues that Defendant is now

asserting that Plaintiff failed to satisfy a "condition precedent" for coverage—namely,

incurring certain expenses—and that this condition precedent should have been plead

with particularity.  Plaintiff finally argues that Defendant has waived these defenses by failing to properly raise them properly earlier.

The Court agrees with Defendant that Plaintiff's arguments regarding the vagueness of the affirmative defenses, based on Fed. R. Civ. P. 8, should have been raised by filing a timely Motion to Strike the Affirmative Defenses within twenty days of service of the Answer and Affirmative Defenses.  However, Plaintiff's main problem appears to be with Defendant's assertion of arguments regarding the meaning of certain contractual terms that were not specifically pleaded in its affirmative defenses, rather than the form of the affirmative defenses themselves.

What both Plaintiff and Defendant fail to observe, however, is that the issue of what the terms "incurred" and "personal effects" mean, in the context of this contract, need not be raised as an affirmative defense at.  An avoidance or affirmative defense, as contemplated under Fed. R. Civ. P. 8(c), is a defensive allegation that either 1) admits the allegations of the complaint but provides another reason why the Plaintiff may not recover, or 2) "concerns allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer."  Wright & Miller Federal Practice and Procedure: Civil 3d §1271.  The Plaintiff's entitlement to recover under the contract, and as such, the meaning of the terms in that contract, are at the core of Plaintiff's prima facie case.  Plaintiff cannot possibly assert that it was not on notice that the meaning of key contractual terms would be at issue in this case.  Further, Defendant cannot be said to have waived these arguments when there was no obligation to plead them affirmatively in the first place.

Plaintiff attempts to recast Defendant's arguments by characterizing them as

3

assertions that Plaintiff failed to satisfy a condition precedent for coverage under the policy–namely, incurring certain expenses.  Plaintiff argues that Defendant has waived this argument because it was not plead with the specificity required by the Federal Rules.  Although the performance of all conditions precedent may be plead generally, "a denial of performance or occurrence shall be made specifically and with particularity." Fed. R. Civ. P. 9(c).  However, contrary to Plaintiff's arguments, there is no requirement in Rule 9(c) that such a denial be made in the Answer.  In fact, the Eleventh Circuit has held that "specific denial of performance of conditions precedent may be raised by motion as well as by answer." Associated Mechanical Contractors, Inc. v. Martin K. Eby Construction Company, Inc., 271 F.3d 1309, 1317 (11th Cir. 2001); see also 2-9 Moore's Federal Practice - Civil §9.01(3) ("Denial of performance or occurrence of a condition precedent can also be made in a motion for summary judgment . . .").  Thus, the Court need not decide whether the incurring of expenses by the Plaintiff is properly considered a condition precedent–even if it is, this argument is properly raised in the instant Motion for Partial Summary Judgment, and has not been waived. Accordingly, the Court is not willing to strike Defendant's arguments in its Motion for Partial Summary Judgment as to the meaning of the contractual terms "incurred" and "personal effects."

III.    **Plaintiff's Motion to Strike Paragraphs 24, 28, 30, 32, 34, 38, and 43 of the Defendant's Statement of Undisputed Facts [DE 41]**

Plaintiff next moves to strike several paragraphs from the Defendant's Statement of Undisputed Facts.  The Court has considered Plaintiff's Motion, Defendant's Response [DE 53], and Plaintiff's Reply [DE 56], and is otherwise fully advised in the

premises.

Plaintiff's Motion is based primarily on the lack of support in the record for certain paragraphs in Defendant's Statement of Undisputed Facts. Defendant subsequently filed an Amended Statement of Undisputed Facts, which purports to correct the problems indicated in Plaintiff's Motion, and to which Plaintiff responded by filing an additional Motion to Strike. Accordingly, Plaintiff's Motion to Strike the original Statement of Undisputed Facts is denied as moot.

## IV.     Plaintiff's Motion to Strike Defendant's Amended Statement of Undisputed Material Facts [DE 57]

Plaintiff next moves to strike Defendant's Amended Statement of Undisputed Material Facts. The Court has considered Plaintiff's Motion, Defendant's Response [DE 70], and Plaintiff's Reply [DE 72], and is otherwise fully advised in the premises.

The Amended Statement of Undisputed Facts that Plaintiff seeks to have stricken was filed in support of Defendant's Motion for Partial Summary Judgment. In light of the Court's conclusion that there are numerous disputed issues of material fact which preclude summary judgment on any of Defendant's affirmative defenses, Plaintiff's Motion to Strike Defendant's Amended Statement of Undisputed Material Facts is denied as moot.

## V.     Plaintiff's Motion to Strike the Affidavit of John Retinger [DE 46]

Plaintiff next moves to strike the Affidavit of John Retinger, filed by the Defendant in support of its Motion for Partial Summary Judgment. The Court has considered Plaintiff's Motion, Defendant's Response [DE 60], and Plaintiff's Reply [DE 61], and is otherwise fully advised in the premises.

Plaintiff argues that this Affidavit is improper because the affiant lacks personal knowledge of the facts contained in the affidavit, the affidavit fails to set forth facts that would be admissible at trial, and the affiant is not competent to testify to the facts contained in the affidavit.  Plaintiff argues mainly that the Affidavit does not describe allocations for all the funds paid on the claim and that the affiant is not among the individuals previously known to the Plaintiff to have knowledge of the policy.  As the Affidavit sets out, however, Mr. Retinger is an Executive General Adjuster with the insurance company and his responsibilities include oversight of the claim at issue in this case.  Retinger also asserts in the Affidavit that he has personal knowledge of the facts contained in the Affidavit.  It seems clear from the face of the Affidavit that the affiant has personal knowledge of the facts to which he is testifying, and that he is competent to so testify, based on his position with the insurance company and his responsibility for oversight of this specific claim.  There is no requirement that the affiant provide all information he possesses about this matter, as Plaintiff seems to suggest, in order to prove his competence to testify at all.  The requirements of personal knowledge and competency are clearly satisfied here.

Plaintiff also argues that the facts contained in the Affidavit are inadmissible hearsay and conclusory statements, and so may not be considered on a Motion for Summary Judgment.  Specifically, Plaintiff takes issue with Retinger's statements that certain funds were allocated to certain areas of coverage.  However, the Affidavit does not simply state, in conclusory fashion, that certain areas of coverage have been satisfied.  Rather, Retinger provides precise totals for payments made on certain coverages.  The basis for his knowledge of these allocations is provided:  that his

6

position includes the oversight of this claim, and so he has knowledge of what funds were paid out and in what categories of coverage. The absence of additional details regarding other areas of coverage goes to the weight to be accorded to Retinger's Affidavit in consideration of the various pending motions, but it does not necessitate that the Affidavit be stricken.

The Court finds that the facts set out in Retinger's Affidavit are based on the personal knowledge of the affiant, that the affiant has established his competency to testify to these facts, and that the facts provided, although limited, are admissible. Accordingly, Plaintiff's Motion to Strike the Affidavit of John Retinger will be denied.

## VI.     Plaintiff's Motion to Strike the Affidavit of Sharon Kerwick [DE 58]

Plaintiff next moves to strike the Affidavit of Sharon Kerwick, filed by the Defendant in opposition to Plaintiff's Motion for Final Summary Judgment. The Court has considered Plaintiff's Motion, Defendant's Response [DE 69], and Plaintiff's Reply [DE 71], and is otherwise fully advised in the premises.

Affidavits submitted by experts must set forth specific supporting facts and may not simply make conclusory allegations. Evers v. General Motors, 770 F.2d 984, 986 (11th Cir. 1985). To have any probative value, such an affidavit must provide facts from the record to support the conclusions drawn. Id. Kerwick's Affidavit states that she has personally examined the artwork at issue and provides a replacement value and fair market value for the artwork. However, Kerwick goes into no more detail as to the factual basis for her findings. A party may not avoid summary judgment based solely on an affidavit containing conclusions for which no factual support is provided. Evers, 770 F.2d at 986. As such, Defendant could not avoid summary judgment based solely

7

on this Affidavit, but <u>Evers</u> provides no indication that the Court must actually strike the Affidavit.  Further, Kerwick's full report has also been placed in the record, and the Court can and will consider this report, including its conclusions and factual support, in evaluating Plaintiff's Motion for Final Summary Judgment.  Accordingly, Plaintiff's Motion to Strike the Affidavit of Sharon Kerwick is denied as moot, in light of the fact that the information contained in this Affidavit is also contained in the full-length report, which does contain the requisite factual support.

## VII.    **Cross Motions for Summary Judgment**

The Court now turns its attention to the substantive Motions at issue: Defendant's Motion for Partial Summary Judgment and Plaintiff's Motion for Final Summary Judgment.  The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp.</u>, 477 U.S.

8

at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.  As long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. at 249–50.

## A.     Defendant's Motion for Partial Summary Judgment [DE 31]

Defendant moves for partial summary judgment as to its First, Third, Fourth, Fifth, and Sixth Affirmative Defenses.  The Court has considered the Defendant's Motion, Plaintiff's Response [DE 50], Plaintiff's Statement of Facts as to Which There is a Genuine Issue to be Tried [DE 51], and Defendant's Reply [DE 65], and is otherwise fully advised in the premises.

Each of the affirmative defenses raised in Defendant's Motion for Partial Summary Judgment essentially asserts that no further payments are due to Plaintiff in a given category of coverage.  However, there are some analytical distinctions among them, and the Court considers each in turn.

### i.    *First and Fifth Affirmative Defenses*:

These two affirmative defenses are similar, in that they both allege that Defendant has fully satisfied its obligations pursuant to the policy.  In support of these defenses, Defendant provides the affidavit of John Retinger, which alleges that the payments made to the Plaintiff were allocated to include the full limits of liability ($28,068.00) for business personal property and the full amount claimed ($960) for inventory expenses.

Plaintiff disputes these allocations, alleging that the checks provided to Plaintiff from the insurance company provided no indication of how the funds were being allocated.  Plaintiff also submits portions of the Deposition of Luis Cedre, where Cedre testifies that payments made by the insurance company were labeled "advance" payments, and no allocations were made.  (Deposition of Luis Cedre, [DE 51-2].)

The first and fifth affirmative defenses are wholly dependent on the establishment of the company's payment of certain sums for certain coverage areas. Given the testimony of Cedre and the failure of the company to document its allocation of payments on the checks, the Court concludes that there exists a genuine dispute as to these key facts, and summary judgment is inappropriate on these two affirmative defenses.

### ii.    *Defendant's Third and Sixth Affirmative Defenses*

These two affirmative defenses are similar, in that they both hinge on a determination of whether Plaintiff actually "incurred" certain expenses. Defendant's argument is a two-part one: Defendant argues first that although the term "incur" is not defined in the policy, it should be read by the Court to require that the insured actually take steps to replace or obtain the needed items and incur a financial obligation in so doing. Defendant then alleges that Plaintiff has actually incurred, or spent, only $4,725 in extra expenses, not the full amount claimed in the complaint. Plaintiff responds that nearly $125,000 of extra expenses have, in fact been incurred. Plaintiff also contradicts Defendant's statement that only $4,725 was spent on rent for replacement office space, alleging that the firm bartered architectural services in exchange for office space, and settled a subsequent copyright lawsuit in exchange for release from the obligation to pay the full rent owed to the owner of the office space. (Settlement Agreement, [DE 51-4].) Defendant also alleges that Plaintiff has not provided evidence that he has incurred costs to replace valuable papers or records. Plaintiff contradicts that statement, alleging that $24,668 has actually been spent to redraft previously completed projects.

Despite the obvious factual disputes, the Court can resolve the purely legal question of the meaning of the term "incur" in this contract, and does so below. However, even with the resolution of this legal issue, the Court cannot grant summary judgment on these affirmative defenses in their entirety because the record is entirely unclear as to 1) how much the insurance company paid on these categories of claims, and 2) what expenses were, in fact, incurred. The Retinger affidavit does not account for much of the total payments made by the insurance company, and Defendant has provided no additional evidence to show what, if any, payments were made in these two

11

categories.  Further, Plaintiff points to Defendant's own exhibit (Plaintiff's Answers to

Interrogatories, [DE 33-5]) to argue that certain monies have actually been expended in

these categories beyond that which was reimbursed by the company.  Without a clearer

record on these questions, summary judgment is inappropriate.

### iii.    Defendant's Fourth Affirmative Defense

Finally, Defendant moves for summary judgment on its fourth affirmative

defense: that it is not obligated to pay any amounts under the additional coverage for

personal effects.  Defendant argues that, although the policy does not define the term,

"personal effects" should be read to include only items or possessions carried on the

insured's person.  Thus, Defendant alleges that Plaintiff has made no claim for loss of

"personal effects," and books, periodicals, building codes, product catalogs, and

samples of finished materials do not constitute "personal effects."

Plaintiff responds that he has, in fact, made a claim for losses to personal effects

in the amount of $21,792.93, including architectural books, periodical publications,

building codes and other administrative publications, product catalogs, and samples of

finished materials.  Because both Plaintiff and Defendant seem to agree that no monies

have been paid in this category by the insurance company, the motion for summary

judgment on this affirmative defense turns on the proper interpretation of the term

"personal effects."  The Court is able to resolve the purely legal question of the meaning

of this term in the contract, and does so below.  However, in light of the fact that some

of the items claimed by Plaintiff in this category may be covered by the terms of the

policy, as interpreted below, the Court cannot grant summary judgment in favor of the

Defendant on its Fourth Affirmative Defense.

    *iv.*    ***Partial Summary Judgment as to the Meaning of the Terms "Incur" and "Personal Effects"***

Although the record contains too many factual disputes for the Court to grant summary judgment as to any of the Defendant's affirmative defenses in their entirety, the Court is able to resolve the purely legal question as to the meaning of the contractual terms "incur" and "personal effects."

### a) *Legal Standard for Interpretation of Contractual Terms*

The interpretation of an insurance contract is a matter of law for the Court's determination. Strama v. Union Fid. Life Ins. Co., 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001); U.S. v. Pepper's Steel & Alloys, Inc., 823 F. Supp. 1574, 1579 (S.D. Fla. 1993). The Florida Supreme Court has consistently held that insurance contracts must be construed according to the plain language of the policy. E.g. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003); Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 735 (Fla. 2002); Prudential Prop. and Cas. Ins. Co. v. Swindal, 622 So. 2d 467, 472 (Fla. 1993). However, where there is an ambiguity in the contract language, the ambiguity must be construed liberally in favor of the insured and strictly against the insurer, who generally drafted the contract language. E.g. Firemans Fund Ins. Co. of San Francisco v. Boyd, 45 So. 2d 499, 501 (Fla. 1950); State Farm Fire and Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998); Prudential Prop., 622 So. 2d at 472; Swire Pac. Holdings, 845 So. 2d at 165. Florida courts have made clear that it is only when there is a genuine inconsistency or ambiguity in the policy that this rule of construction is employed. "Thus, it is only where courts first determine that policy language is ambiguous that contractual language is to be

construed in favor of the insured.  When an insurance contract is not ambiguous, it

must be given effect as written." Siegle, 819 So. 2d at 735.  This rule of construction

"'does not allow courts to rewrite contracts, add meaning that is not present, or

otherwise reach results contrary to the intentions of the parties.'" Swire Pac. Holdings

845 So. 2d at 165 (citing Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369

So. 2d 938, 942 (Fla. 1979)); See also Deni Assocs. of Fla., Inc. v. State Farm Fire &

Cas. Ins. Co., 711 So. 2d 1135, 1138 (Fla. 1998).

In Florida, insurance policies must be read as a whole.  Fla. Stat. § 627.419 (1);

see also Matthews v. Ranger Ins. Co., 281 So. 2d 345, 348 (Fla. 1973); Gen. Star

Indem. v. W. Fla. Village Inn, Inc., 874 So. 2d 26, 30 (Fla. 2nd DCA 2004).  Therefore,

just because an operative term is not defined, does not necessarily mean that the term

is ambiguous.  Swire Pac. Holdings, 845 So. 2d at 166; Deni Assoc., 711 So. 2d at

1139; State Farm, 720 So. 2d at 1076.  Gen. Star Indem., 874 So. 2d at 33.  "An

insurance policy, though it may be complex, is not ambiguous merely because it

requires analysis to interpret it." Gen. Star Indem., 874 So. 2d at 31.  "[T]erms of an

insurance policy should be taken and understood in their ordinary sense and the policy

should receive a reasonable, practical and sensible interpretation consistent with the

intent of the parties – not a strained, forced or unrealistic construction." Siegle, 819 So.

2d at 736 (quoting Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.,

260 So. 2d 249, 253 (Fla. 4th DCA 1972)).

### b) *Meaning of the Term "Incur"*

Defendant argues that the term "incur" in the contract has a meaning requiring

that monies actually be spent by the Plaintiff before those amounts are recoverable

under the policy.  Plaintiff has not directly disputed this interpretation in either its Response or at oral argument, but has instead contended that this argument was not properly plead.  As discussed above, the meaning of key contractual terms is quite clearly at issue in this case, and is at the core of Plaintiff's own prima facie case, so the Court finds no merit in Plaintiff's claims that this argument has been waived because Defendant did not plead it specifically in its affirmative defenses.  The Court finds that the meaning of the term "incur" in the contract is not ambiguous, and does refer to financial obligations actually taken on by the Plaintiff.  The Court thus grants summary judgment for the Defendant on this legal issue.

### c) *Meaning of the Term "Personal Effects"*

Defendant argues that the term "personal effects" includes only privately owned items usually worn or carried on one's person, such as keys or a wallet.  Plaintiff again fails to advocate for an alternative definition of this term, contending only that the argument was improperly raised and that a genuine issue of material fact exists as to whether Plaintiff has made claims for "personal effects."  Plaintiff also asserts that its claims for several items, such as architectural books, periodicals, building codes, administrative publications, product catalogs, and samples of finished materials, fall within the meaning of the term "personal effects."

The term "personal effects" is not defined in this contract.  The failure to define a term does not automatically mean that the term is ambiguous.  However, the Court notes that this insurance contract was issued to David and Schindler Architects, a business, rather than to an individual, and the term "personal effects" is even less clear when read in that context.  Plaintiff points to a Webster's Dictionary definition of the

15

term that supports its argument.  However, the Black's Law Dictionary definition is much more expansive, including furniture, silverware, collectibles, and other like items, although this definition contemplates the term in the context of an estate, not an insurance contract.  In short, the Court can find no one definition of the term "personal effects," and the contract itself fails to provide one; accordingly, the Court finds that this term is ambiguous as it appears in this contract.

Because this term is found to be ambiguous, Florida law provides that it is to be construed strictly against the insurer and liberally in favor of the insured.  However, this rule of construction "'does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'" Swire Pac. Holdings 845 So. 2d at 165 (citing Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 942 (Fla. 1979)).  Accordingly, the Court must construe this term liberally in favor of the Plaintiff, but in a manner that is consistent with the contract as a whole.  Although the term "personal effects" is not defined in the contract, the term "business personal property" is defined as "property you own or lease that is used in your business."  (Insurance Contract, Exhibit F, p. 2 [DE 33-7].)  Coverage for "personal effects" is found in the "additional coverages" section of the policy, which indicates that this coverage should provide additional coverage not otherwise provided for in the contract.  Thus, the Court concludes that "business personal property" and "personal effects" are two distinct types of property, and there is no overlap between the two.  However, the ambiguity in the contract and the rule of construction requiring liberal construction in favor of the insured do not allow the Court to narrow the definition of "personal effects" any further.

16

Accordingly, the Court concludes as a matter of law that coverage for "personal effects" does not include those items that fit within the definition of "business personal property," but includes all other items owned by Mr. David and Mr. Schindler that were destroyed in the fire.  Thus, the key distinction between the two categories of coverage is whether an item was used in the business or not:  if it was used in the business, it is covered under business personal property; if it was not used in the business, it is covered under personal effects.  This distinction, however, is a purely factual one that must be decided at trial.

**B.    Plaintiff's Motion for Final Summary Judgment [DE 27]**

Plaintiff also moves for final summary judgment as to its claims.  The Court has considered the Plaintiff's Motion, Defendant's Response [DE 54], Defendant's Notice of Controverting Plaintiff's Statement of Undisputed Facts [DE 55], and Plaintiff's Reply [DE 62], and is otherwise fully advised in the premises.

Plaintiff's Motion for Final Summary Judgment is undone by Plaintiff's own arguments.  As discussed above, the factual record is unclear as to how much has been paid out on this policy to date, and how those payments are allocated among the different areas of coverage.  Thus, even if the factual record was entirely clear as to the validity of the claims submitted by the Plaintiffs and the coverages afforded by the policy, summary judgment cannot be sustained because the factual record is unclear as to what has already been paid to date.  Therefore, Plaintiff's Motion for Final Summary Judgment must be denied.

**VIII.   CONCLUSION**

It is hereby **ORDERED AND ADJUDGED** as follows:

17

1.   Plaintiff's Motion to Strike Defendant's Motion for Partial Summary

Judgment [DE 42] is **DENIED**.

2.   Plaintiff's Motion to Strike Paragraphs 24, 28, 30, 32, 34, 38, and 43 of the

Defendant's Statement of Undisputed Facts [DE 41] is **DENIED as moot**.

3.   Plaintiff's Motion to Strike Defendant's Amended Statement of Undisputed

Material Facts [DE 57] is **DENIED as moot**.

4.   Plaintiff's Motion to Strike the Affidavit of John Retinger [DE 46] is

**DENIED**.

5.   Plaintiff's Motion to Strike the Affidavit of Sharon Kerwick [DE 58] is

**DENIED as moot**.

6.   Defendant's Motion for Partial Summary Judgment [DE 31] is **GRANTED**

**in part and DENIED in part**.

7.   Plaintiff's Motion for Final Summary Judgment [DE 27] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this 13th day of March, 2007.

_____
JAMES I. COHN
United States District Judge


Copies provided to:

Counsel of record